UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EVA BROWN | CIVIL ACTION |
| VERSUS | NO. 24-923 |
| PAC HOUSING GROUP, LLC, *et al.* | SECTION M (4) |

## <u>ORDER & REASONS</u>

Before the Court is the motion of defendants PAC Housing Group, LLC ("PAC"), MOF-Preservation of Affordability Corp., MOF-Willows, LLC, Ministry Outreach Foundation ("MOF"), and Dr. Richard Hamlet (collectively, "Defendants") to dismiss the third amended complaint of plaintiff Eva Brown for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1]  Brown responds in opposition,[2] and Defendants reply in further support of their motion.[3]  Also before the Court is the motion of defendant Dr. Richard Hamlet to dismiss the claims asserted against him in the third amended complaint for failure to state a claim under Rule 12(b)(6).[4]  Brown also opposes Hamlet's motion.[5]  Having considered the parties' memoranda, the record, and the applicable law, the Court denies both motions.

## I.   BACKGROUND

This case arises from the alleged shooting death of Brown's son, S.A.S., on the premises of the Willows Apartments ("the Willows"), an apartment complex allegedly owned, operated, and managed by Defendants.[6]  Brown asserts wrongful death and survival claims under articles

---

[1] R. Doc. 25.
[2] R. Doc. 26.
[3] R. Doc. 28.
[4] R. Doc. 24.
[5] R. Doc. 27.
[6] R. Doc. 11 at 5, 9.

2315 and 2317 of the Louisiana Civil Code, alleging that Defendants were negligent in failing to address a pattern of criminal activity at the Willows, directly resulting in S.A.S.'s death.[7]  Brown initially filed suit in state court.  She amended the complaint twice[8] before Defendants removed the action to this Court based on diversity jurisdiction.[9]  Defendants then filed their first motion to dismiss under Rule 12(b)(6).[10]  Brown responded by filing, without leave of court, a third amended complaint which named an additional, nondiverse defendant, Candren Lemieux, the property manager of the Willows.[11]  As a result of the amended filing, the Court dismissed the Defendants' first 12(b)(6) motion as moot.[12]  Defendants next moved to strike the third amended complaint or, alternatively, only the parts adding Lemieux.[13]  Brown responded by seeking leave to file the third amended complaint.[14]  The Court declined to strike the amended complaint in its entirety and granted in part Brown's motion for leave to amend.[15]  However, after performing a *Hensgens* analysis, the Court struck the parts of the amended complaint adding Lemieux, finding (among other factors) that the additional "allegations relate[d] only to Lemieux's performance of general administrative duties and therefore [did] not provide a basis for finding personal liability" as an individual employee under *Koehring*, thus "suggesting to the Court that the purpose of the amendment [was] to defeat diversity jurisdiction."[16]  Now, Defendants collectively, and defendant Richard Hamlet individually, again seek dismissal under Rule 12(b)(6).[17]

---

[7] *Id.* at 8, 10-11.
[8] R. Docs. 1-2; 1-4.
[9] R. Doc. 1.
[10] R. Doc. 8.
[11] R. Doc. 11.
[12] R. Doc. 14.
[13] R. Doc. 17.
[14] R. Doc. 18.
[15] R. Doc. 23.
[16] *Id.* at 9-11 (quotation at 11).
[17] R. Docs. 24; 25.

## II.    PENDING MOTION

In their motion to dismiss, Defendants contend that the third amended complaint asserts legal conclusions rather than factual allegations.[18]  In particular, Defendants contend that Brown has failed to plead specific facts to establish that Defendants owed or assumed a duty to protect S.A.S. from the criminal actions of third parties.[19]  Brown, in opposition, contends that she sufficiently pleaded specific allegations stating a legally cognizable claim that Defendants, as owners of the premises, owed a duty to S.A.S., an invitee, arising out of their knowledge of the dangerous conditions at the Willows and assumed the duty to provide security, and that Defendants breached these duties by failing to mitigate the risks known to them and provide adequate security.[20]  In reply, Defendants again contend that the complaint fails to state a claim upon which relief can be granted because it lacks sufficient specific factual allegations to show that Defendants owed any duty to S.A.S.[21]

Hamlet's motion to dismiss[22] relies on the Court's *Hensgens* analysis in its order[23] striking Brown's claims pertaining to Candren Lemieux, the property manager of the Willows, from the third amended complaint.  Hamlet argues that, because the allegations against Hamlet "virtually mirror the allegations made against Mr. Lemieux [and] the Court found [that Brown] failed to state a cognizable claim against Mr. Lemieux," the claims against Hamlet should likewise be dismissed.[24]  In opposition, Brown points out that the complaint alleges that Hamlet "personally

---

[18] R. Doc. 25-2.
[19] *Id.*
[20] R. Doc. 26.
[21] R. Doc. 28.
[22] R. Doc. 24-2.
[23] R. Doc. 23.
[24] R. Doc. 24-2 at 4.

owned the property where the incident occurred and operated it as a real estate business by leasing it to tenants."[25]

## III.  LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted

---

[25] R. Doc. 27 at 1.

unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)). Motions to dismiss are disfavored. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540

F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).   Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B.  Analysis

"Whether a claim arises in negligence under La. Civ. Code art. 2315 or in premises liability under La. Civ. Code art. 2317.1, the traditional duty/risk analysis is the same." *Farrell v. Circle K Stores, Inc.*, 359 So. 3d 467, 473 (La. 2023).   A plaintiff asserting a negligence claim must prove five separate elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element).

*Id.* at 473 (citing *Malta v. Herbert S. Hiller Corp.*, 333 So. 3d 384, 395 (La. 2021)).   "The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law." *Evans v. Abubaker, Inc.*, 384 So. 3d 853, 858 (La. 2024). Defendants contend that premises owners owe "no duty to control, or warn against, the criminal actions of a third person to prevent him from causing physical injury to another, unless some special relationship exists" and that no such relationship existed between S.A.S. and Defendants.[26] Brown responds by noting that the complaint alleges that S.A.S. was an invitee at the time of the

---

[26] R. Doc. 25-2 at 7 (citing *Terrell v. Wallace*, 758 So. 2d 158 (La. 2000)).

incident and argues that a landlord's duty to protect or warn invitees from third-party harm can arise out of a landlord's voluntary assumption of such a duty, or when the landlord should have foreseen such criminal activity.[27]

Brown's third amended complaint pleads sufficient factual allegations to support a legally cognizable negligence claim against Defendants.  The complaint first alleges that the Willows was under the control of and "owned, managed, maintained and operated by" Defendants at the time of the shooting.[28]  The complaint further alleges that S.A.S. was an invitee of the Willows at the time of the incident.[29]  Defendants insist, though, that the "bare conclusion" that S.A.S. was an invitee "requires this Court to assume for the purposes of adjudicating this Rule 12(b)(6) motion that S.A.S. either had no reason to be present at the apartment complex at the time of his death, or that he should not have been present."[30]  This contention misstates the applicable standard: on a motion to dismiss, the Court must accept Brown's allegation that S.A.S. was an invitee of the Willows and all other well-pleaded factual allegations as true.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  Regardless, while invitee status may determine the scope of any duty owed, it is not determinative of whether any duty exists.

> The jurisprudence is well established that "the duties of the landowner for the purpose of determining liability in negligence actions … are no longer defined in terms of the status of the person entering the land." … The proper test is "whether in the management of his property the landowner has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative."

---

[27] R. Doc. 26 at 6.
[28] R. Doc. 11 at 9.  Brown's first amended complaint (R. Doc. 1-2) substituted MOF-Willows, LLC and MOF-Preservation of Affordability Corp. in place of "The Willows Apartment Partnership, Ltd."
[29] R. Doc. 11 at 9.
[30] R. Doc. 25-2 at 7.

*Johnson v. Evanston Ins. Co.*, 368 So. 3d 703, 716 (La. App. 2023) (internal citations and alterations omitted) (first quoting *Barcia v. Keil's Est.*, 413 So. 2d 241, 243 (La. App. 1982), and then quoting *Cates v. Beauregard Elec. Coop., Inc.*, 328 So. 2d 367, 370 (La. 1976)).

While Defendants correctly observe that landowners have no general duty to protect others from third-party criminal acts,[31] "the Louisiana Supreme Court has held that business owners 'do have a duty to implement reasonable measures to protect their patrons from criminal acts *when those acts are foreseeable.*'"  *Strauss v. Ironshore Specialty Ins. Co.*, 2020 WL 7770879, at *2, *4 (La. App. Dec. 30, 2020) (emphasis in original)  (quoting *Posecai v. Wal-Mart Stores, Inc.*, 752 So. 2d 762, 766 (La. 1999)) (reversing summary judgment in favor of alleged apartment complex owner in negligence action arising out of shooting at apartment complex because evidence that "multiple violent crimes … had occurred in the immediate area" in the years prior, and that defendant "was aware of at least some risk to its residents," raised a genuine issue of material fact as to whether defendant "reasonably should have foreseen the occurrence of a violent crime on the premises"); *see also Manning v. RH Windrun LLC*, --- So. 3d ---, 2024 WL 1905039 (La. App. May 1, 2024) (reversing summary judgment in favor of apartment complex owner after finding the plaintiff's "statements regarding the prior incidents of crime on the property and the lack of security measures implemented by [d]efendant [were] sufficient to create an issue of fact for trial as to whether the shooting of decedent was foreseeable and as to whether [d]efendant had a duty to provide security to its guests under the circumstances"), *writ denied*, 2024 WL 4355053 (La. Oct. 1, 2024); *cf. Brown v. England, L.P.*, --- So. 3d ---, 2024 WL 4297740 (La. App. Sept. 26, 2024) (affirming summary judgment in favor of apartment complex owner after finding that

---

[31] *Id.* at 9.

shooting of guest at "quiet" apartment complex with no known prior incidents of gun violence was not reasonably foreseeable).

The complaint alleges that Defendants were made aware of an escalating "pattern of criminal activities, including homicides, assaults, robberies, and break-ins" at the Willows by residents' "ongoing and unheeded requests for protection" and "significant" news coverage of criminal activity at the Willows.[32]  These allegations are sufficient to support the reasonable inference that an incident like the shooting should have been foreseeable to Defendants, which, under Louisiana law, would give rise to a duty to protect invitees from such foreseeable criminal acts.  The complaint also identifies several specific breaches of this duty by Defendants,[33] and alleges that those breaches "directly caused, proximately caused, and/or were a substantial factor in causing S.A.S.'s death and Ms. Brown's resulting injuries and damages."[34]  Thus, Brown has sufficiently pleaded each element of a negligence claim against Defendants.

The complaint also pleads sufficient facts to state a cognizable claim against Hamlet individually.  Hamlet argues that he, like Lemieux, cannot be held liable for alleged actions undertaken in his capacity as chief executive officer ("CEO") and president of MOF under *Koehring*,[35] which requires that four criteria be met showing that the defendant employee personally, rather than vicariously, breached a duty to the plaintiff in order to hold an employee liable in their individual capacity for breaches arising "solely because of the employment relationship." *Ford v. Elsbury,* 32 F.3d 931, 936 (5th Cir. 1994).  While the complaint does allege that Hamlet is CEO and president of MOF,[36] the allegations against Hamlet do not arise "solely

---

[32] R. Doc. 11 at 5-8 (quotations at 5, 6).
[33] *Id.* at 9-11.
[34] *Id.* at 9-11, 15.
[35] R. Doc. 24-2 at 3-4.
[36] R. Doc. 11 at 2.

Case 2:24-cv-00923-BWA-KWR   Document 29   Filed 10/10/24   Page 10 of 11

because of [his] employment relationship" with MOF.  *Id.*  The complaint alleges that the Willows is "*owned*, managed, maintained, and operated by PAC, [MOF-Willows, LLC, MOF-Preservation of Affordability Corp.], MOF, *and/or Dr. Hamlet*," subjecting Hamlet to liability as an alleged landowner, not just as an employee.[37]  Lemieux, by contrast, was alleged only to have been an employee, not an owner, of the Willows.[38]  The complaint also alleges that Hamlet was quoted by local news as stating that "he pays for security" at the Willows,[39] which, Brown argues, "prov[es] his voluntary assumption of a duty to provide adequate security measures."[40]  Louisiana courts have found that, while no general duty to protect others from third-party crimes exists, when such a duty "has been assumed, liability may be created by a negligent breach of that duty."  *Harris v. Pizza Hut of La., Inc*., 455 So. 2d 1364, 1371 (La. 1984); *cf. Mundy v. Dep't of Health & Hum. Res*., 620 So. 2d 811 (La. 1993) (holding that plaintiff failed to prove defendant hospital was negligent in that evidence of a single incident was insufficient to conclude that security measures taken were unreasonable or inadequate).  The complaint alleges specific breaches of the duty to provide adequate security, which had been assumed by Defendants, including Hamlet,[41] and such breaches are alleged to have "directly caused, proximately caused, and/or were a substantial factor in causing S.A.S.'s death and Ms. Brown's resulting injuries and damages."[42]  This is enough – at the pleadings stage anyway – to state a cognizable negligence claim against Hamlet.

IV.    **CONCLUSION**

        Accordingly, for the foregoing reasons,

---

[37] *Id.* at 9 (emphasis added).
[38] *Id.* at 3.
[39] *Id.* at 6-7.
[40] R. Doc. 27 at 4.
[41] R. Doc. 11 at 10.
[42] *Id.* at 15.

IT IS ORDERED that defendant Dr. Richard Hamlet's motion to dismiss the third amended complaint for failure to state a claim (R. Doc. 24) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion to dismiss the third amended complaint for failure to state a claim (R. Doc. 25) is also DENIED.

New Orleans, Louisiana, this 9th day of October, 2024.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

11